Arguments not to exceed 15 minutes per side. Ms. Shoup, you may proceed for the appellant. Good morning. The subject matter of our appeal this morning deals solely with the application  and interpretation of an endorsement of an umbrella policy purchased by Merlot Construction Company. There is an underlying construction project which required the subcontractor Merlot Construction to purchase this insurance and add as an additional insured, my insured, Kirko. In the policy, endorsements are added to accommodate the specific needs of the insured and in this particular policy, an endorsement was added with regard to coverage provided with the underlying contract or additional insurers when the underlying contract requires that the party purchase or add the contracting party to the insurance policy. And I would direct you to that endorsement. I think it's important in understanding or applying this endorsement that you read it in its entirety. The lower court relied solely upon the title or the heading on the page of the endorsement and did not read the document in its entirety. If you read the documents in its entirety, it clearly states that the policy terms apply except as stated below. And below that statement is the particular provision that we are relying upon. And that provision states clearly and unambiguously that coverage will be provided to any additional insured as required by a written contract, written agreement or certificate of insurance and we will provide that coverage on a primary basis. As such, the heading that's relied upon in the lower court is eliminating or restricting coverage that does not coincide with the language of the provision itself. Can't the heading also be read consistent with the text of the policy? Well, I believe, Judge, It can be read in a couple of ways, Kevin. Well, I think the heading, it can, I guess I'm trying to help you. Well, it can be read in a couple of ways. I read it as additional insured dash the application of primary non-contributory coverage when required by a written contract. I don't think it is interpreted as the district court does, but I read it in the entirety of the whole that in conjunction with the text itself of the provision, it's clear that there is no restriction in the underlying written contract to require the coverage to be primary or the underlying contract to require the primary coverage. It's very simple. It's not as complicated as the other cases you've heard this morning, but unless you have any questions, I'm comfortable relying upon them. If you assume, if we assume that you're correct, that in effect this heading doesn't do anything in changing the substance of the endorsement, that's your contention, correct? I think the heading serves the purpose of identifying the endorsement. I don't think it I understand it has a purpose. I'm asking, I'm just saying, you're saying that if we follow the language of the endorsement rather than the language of the letter, rather than some interpretation of the title, is that correct? That is correct. Assume for the moment, I'm not saying we do, but assume for the moment we agree with you on that. Is there any other issue in this case? Not to my understanding, no. What is the consequence if we take that position? The consequence if we take that position is that a meritsure would be the primary umbrella coverage in the underlying action, and then my policy would not kick in until their policy is extinguished. We would reverse the judgment of the district court. I'm sorry. We would reverse the judgment of the district court. Correct. It would be reversed. What is the point of Part G of your brief then? This is your brief, the blue one, right? Correct. What provision are you, what It goes on for three pages. Because the obligations to CURCO are secondary to a meritsure's primary policy, a merisure has the sole responsibility to defend and condemn. Is that just another way of supporting what we've already been talking about? I believe so, sir, because I think until the underlying primary policies are extinguished, and the underlying case is in the Court of Appeals. So right now, parties, a merisure and travelers have negotiated an agreement with regard to indemnification and defense in the first layer of coverage. We're dealing solely with the second layer or the umbrella layer of coverage. So you're saying what we decide today doesn't say anything about the first layer. Is that right? That is exactly correct. All right. Thank you. May it please the Court. Don Elder on behalf of Ampeli, a merisure insurance company. We're arguing today, Your Honor, and advocating that the district court's opinion by Judge Kumar should be affirmed. I think what the argument presented by travelers today, I think, is a little out of context, respectfully. We have two primary policies that are currently defending Kirko Manix, which is the named insured for travelers. One being a merisure's primary policy, one being travelers' primary policy. The issue today is in the next layer of coverage. Travelers is asserting that what should happen here is they should, if you'll permit me for being potentially glib, leapfrog into the next layer of coverage without any exhaustion of the primary layer and be allowed to recoup their defense costs. If you'll permit me to step back, this defense obligation at the primary layer of coverage was something that travelers initially did on behalf of Kirko and then reached out to a merisure, with Kirko being an additional insured on the merisure policy issued to Merlo, and asked that a merisure contribute 50 percent or an equal sharing. That obligation is ongoing to this day. Council for Travelers mentioned that the underlying lawsuit, the El Jamali lawsuit, a bodily injury lawsuit, is currently pending at the Michigan Supreme Court. It has been scheduled for argument, but at present there isn't an indemnity obligation. This is a defense obligation we are talking about. And the defense is being consumed and honored by both of the primary insurers. The fundamental flaw, we believe, is... You're dividing that 50 percent? Yes, Your Honor. And that is in the record, the affidavit of Tracy Sheldon, I believe, at record number 48-1. It attests to that and it includes the course... And nobody objects to the defense obligation 50-50 between T and A? That is correct, Your Honor. The fundamental flaw we contest in Travelers' argument is they haven't argued, they haven't offered any construction, much less a reasonable construction, to the title of the endorsement. The endorsement specifically says that it will provide primary non-contributory coverage at the umbrella layer if it's required by a written contract. Also, what is undisputed in this case, is there was no underlying contract. And that would have been between Kirko Mannix, Travelers named and insured, and Merlo, a Merisher's named and insured. There was nothing in that contract that required primary non-contributory coverage. That is an undisputed fact. But I thought that their argument in front of us and in the briefs is that the title actually could be read as consistent with the text. And the text is clear that your argument does not prevail. I do believe the two can be read consistent. I think at the umbrella level of coverage, which requires exhaustion of primary coverage before you attach at that level, that you would only have a primary obligation there, one, with the exhaustion of the primary, and two, if we have a primary requirement in the underlying subcontract. We don't have either of those. That's not what the text says. And that's what you – I mean, the text is quite clear that if coverage is provided to an additional – I mean, I can read it to you. But, I mean, I don't think there's ambiguity as to the text. Do you think there is? No, I don't think there's an ambiguity in the text or in the endorsement as a whole. I think that we're relying on the – I know. You say that when you put the title with the text, then there's an ambiguity. Okay. Actually, Your Honor, with respect, I'm arguing there's no ambiguity. The title, when you – Your argument is what? There is no ambiguity. And Travelers has an argument of ambiguity in this case. That's the issue. You're saying the title controls over the text of the policy. I do. I believe you read the two together. That's kind of an interesting argument of insurance law, I think. I mean, I think we can consider the title. But, you know, to say that titles control over the more specific body of a policy that is more specific, more detailed, that the short title of a section would control over detailed coverages, that seems like a little bit of a stretch to me. I'm actually saying, Your Honor, the two could be read in harmony, and we're relying on the Ratzko case for that. Okay. I think you have to read this contextually. At the umbrella level, you wouldn't have a primary obligation. The intent was that the umbrella policy issued by AmeriShare would match. We don't look at the intent. Don't we look at the clear language of the insurance policy? Yes, Your Honor. The parties may intend something else, but if this is what the policy says, we enforce it as written, don't we? We do, Your Honor, and I believe that the title needs to be included in the intent. Forgive me, Your Honor. May I interject? Yes. And I apologize if I'm not understanding this at all. But my understanding of the text, and we're looking at the AmeriShare umbrella policy endorsement, my understanding of the text is that travelers contends that the text is clear, and are you agreeing with them that the text is clear in their favor, if we're just looking at the text? And if not, please explain why you're saying the text is not clear in travelers' favor. Forgive me, Your Honor. I'm not agreeing with travelers' position, nor did Judge Kumar. We're arguing that you look at the entire endorsement, and it needs to be clear. I understand. I'm putting the heading to the side. We can get into all of the intricacies about what does the heading do vis-à-vis the text. But if there was just the text, would you lose? And if not, why not? If there was just the text? Yes. Well, if there was just the text, this would apply as primary once we get to an exhaustion of the underlying policy. In other words, Your Honor, this is an umbrella. When I was mentioning a contextual discussion here, you have to understand, clearly the Court does. But what was, I think, lost a little bit in some of travelers' argument is this is the second layer up. We haven't exhausted any of the underlying policies. So even if we have just the text. That's how umbrella policies work, right? Yes, sir. Absolutely, Your Honor. We have a dispute as to which umbrella policy is primary and which is secondary, right? Correct. When we get there. Okay. All right. So, yeah, sure. That's the way this works. But assuming that that's the situation, is the text, what was the question? The question is, does this text of the Amerisher umbrella policy endorsement, just looking at the text, does that clearly provide for travelers' interpretation? Or do you have a contrary interpretation of the text? We do, Your Honor. Which is what? Travelers' interpretation is that this policy should go before travelers' own primary policy. To answer your question, Your Honor, the clear text right there, forgive me. That's exactly what it says, isn't it? Well, it does not. It's not primary. Let's see. We will provide primary coverage to the additional insured on a primary basis. I mean, that's what it says. But it does, it snaps actually into the umbrella policy and says it doesn't provide any broader coverage than the umbrella policy. There's an attachment point before you get to the umbrella one. Well, you have two umbrella policies. Which umbrella policy is primary or are they both prorated or are they in conjunction with either of them? And what this says is our umbrella policy will be primary. I mean, it's clear as day. Your Honor, I would argue that it could be primary. Once the primary limit is exhausted. It says it's primary. Okay. Well, I would also argue that the language conflicts with travelers' own other insurance provision as well. So if we're looking at the primary level. That's a different argument. That is a different issue. As opposed to Judge Moore's argument about the text. The text is clear. It was a question, not an argument. Oh, I'm sorry. Your Honor, forgive me. I'm not arguing anything. I have a question. Please. To create some peace on my panel. And it's the same question I asked your opposing counsel. Assume. Don't. I'm not saying it's true. But assume that I don't read this heading as doing anything, you know, in effect. In effect, it could be one thing and it could be other. But it's all the reasoning we've been talking about. Assume you lose on that. I'm not saying you will. But assume you lose on that. Is that or is that not the end of this appeal? She says yes, that's the end of it. Although there's some other stuff in the brief that's a little bit puzzling. I'm not sure what's being argued about. And I don't think whoever writes this needs to know whether there's more to be said if the decision is the way we've been talking here. Am I making sense? Does my question make sense? I think it does, Your Honor. And the answer is, forgive me. I hope I don't come off as long-winded. At the outset of this lawsuit, there hadn't been a finding in favor of Kirko Mannix in the underlying lawsuit. So the indemnity obligation was theoretically in play. That has since changed with a summary judgment being granted at the appellate court. So to answer your question, right now we are sitting at a duty to defend. And, yes, this is the sole issue. The application of this endorsement. So if we decide this one way or the other, that's the end of this appeal and you all will kind of know where to go. I believe that's correct. Presently, you are correct. It's just either yes or no. This title muddies the underlying thing. And so for all of these arguments we've been making, there's not some other argument that has to be resolved by our panel. It's just the effect of this endorsement clause. I believe that is correct, Your Honor. That's helpful. That's helpful. Thank you. Just based on the current state of the underlying lawsuit. Come back to Judge Moore's question. I don't know that I answered it. I hope that I did. But, one, I don't think you can just read this section that the court has been focusing on without considering the title and without considering this is an umbrella policy. And we're talking solely about the duty to defend. At the primary level, the argument Travelers is asking for now is that the umbrella level would essentially be inverted now down to the primary level. I don't think so either. I think you're arguing how the two umbrella policies relate to one another. Whether they're coextensive or whether one's primary. And this all kicks in after the underlying coverage is exhausted. And that's what an umbrella policy is. Precisely, Your Honor. But the request for relief in this case is for a reimbursement of defense fees at the primary level. Well, it's a declaratory action, too, isn't it? Yes, it is. It's correct, Your Honor. This is what insurance companies do. They're not quite sure who provides what coverage. And this is what we ask them to do, come to court and we'll declare the rights. So your point that this is an umbrella policy and it doesn't kick in until after the limits of the primary policies have been exhausted, is that right? Yes, Your Honor. So you're sharing 50-50 in the defense costs. Yes, Your Honor. Is that in litigation in front of us in any way? No. That was agreed to by the parties. There's been no dispute whatsoever. And the primary insurance for each side is what? How much is the primary? A million dollars per occurrence limits for both the emerger and the travelers. Okay. So only after then 2 million is spent would the umbrella policy of either kick in? The answer to that is correct. And lest the court think that there may not be a justiciable controversy, it is the claim for the defense fees from travelers' primary policy that has us here today, Your Honors. It is the attempt to subvert that coverage and not give full effect and without any alternative explanation as to the title, which we believe Ratzko is our case from the Michigan Supreme Court, that says titles are to be considered when construing a policy as a whole. I tend to agree with you that we should consider it, but whether it trumps the more detailed text of the policy I think is a real stretch. I think a more detailed section trumps a short summary of what the section is about. That's all. Okay. Well, Your Honors. Thank you. I don't have any questions. Without any other questions, we would ask that Judge Kumar's judgment be affirmed in the underlying case. Thank you for your time. Your Honors, we have time for a rebuttal, but I really don't believe it's necessary. I think the panel has displayed its understanding of the issues and they are very limited. I appreciate your time. You may overestimate us. I'm being optimistic. Thank you. So you agree then that all we need to do is to decide how to read the header in light of the text? Correct. And I think if you look at the endorsement in its entirety where it says all provisions of the policy will maintain the same, but for the language below, that's where the text is. So if you're reconstructing the policy to include the language of the endorsement, that header would not even be included if you were to cut and paste as the endorsement instructs you to do. Thank you. Thank you both for the argument. The case will be submitted.